Case 21—INDICTMENT—November 16.

# Commonwealth v. Day.

APPEAL FROM FLEMING CIRCUIT COURT.

1. Prohibitory Liquor Law Construed.—Where a prohibitory liquor law provides that it shall not apply "to a regular resident practicing physician who in good faith prescribes liquor to his patient," and then provides that "any physician who shall furnish spirituous, vinous or malt liquors to any person except as a medicine, shall be fined one hundred dollars for each offense," the latter provision must be regarded as providing merely for the punishment of the offense of "prescribing" liquors for other than medicinal purposes; a physician who "furnishes" liquor to another to be drunk as a beverage being subject to the punishment prescribed for "any person" who shall "sell, barter, give, loan or traffic" in spirituous, vinous or malt liquors. Therefore the act is not liable to the objection that it prescribes for the same offense one punishment as to physicians and a different and severer punishment as to all other persons.

2. Same.—Authority to the physician to prescribe liquors gives to the druggist, but to no other person, implied authority to fill the physician's prescription.

3. Same.—Each sale or prescription must be accompanied by a distinct, prescription, and a person can not obtain such liquors from the druggist or physician on a prescription indefinite as to quantity or so general as to cover future deliveries.

4. Same.—Although the act provides that one person shall not procure such liquors for another to be used as a beverage, one person may act as the agent of another in having a prescription filled. The sick man to whom the prescription is given is not required to go after the liquor in person.

5. Same.—When such a law provides by its first section that "it shall be unlawful for any person to sell, barter, give, loan or traffic in spirituous, vinous or malt liquors," and by a subsequent section provides that "the procuring for or delivery by one person of liquor to another, unless a member of the same family, or their invited guests at their own household, to be drunk as a beverage, shall be deemed a sale under the provisions of the first section of the act, and subject the party procuring or delivering the same to the penalties annexed for a violation of said section," the latter section is not to be regarded as a limitation upon the first section, but as an addition to it, and as providing for the punishment of one who procures such liquors for, or delivers them to, another, to be drunk as a beverage, although he may

Commonwealth v. Day.

not sell, barter, give or loan such liquors, or traffic in them, within the ordinary meaning of those terms.

. W. J. HENDRICK, Attorney-General, and JAMES H. SALLEE FOR APPELLANT.

1. Under the Fleming county prohibition law only a druggist can sell liquor upon the prescription of a physician and only one sale can be made on each prescription. (Commonwealth v. Reynolds, 89 Ky., 147; Parker v. Commonwealth, 11 Ky. Law Rep., 454.)

2. The act in question does not enlarge the rights and privileges of the distillers, but on the contrary abbreviates them. (Stickrod v. Commonwealth, 86 Ky., 285.)

3. The Legislature has the constitutional right to regulate the sale by retail . of intoxicating liquors, or to absolutely prohibit its sale, whenever the peace and good order of society require it. (Sarrls v. Commonwealth, 83 Ky., 327; Anderson v. Commonwealth, 13 Bush, 485.)

W. G. DEARING and G. A. CASSIDY FOR APPELLEE.

1. The law known as the Fleming County Prohibition Law was never legally passed because it was never read the first time, as appears from the House journals, of which the court should take judicial notice.

2. A druggist can sell on prescription.   (Commonwealth v. Reynolds, 89 Ky., 147.)   If he can, why not any other person ?   The law should not discriminate.

3. The clear intent of the act is to prevent a sale of liquor to be drunk as a beverage, and as the appellee sold for medicinal purposes he has not violated the law.

4. The law is not constitutional because it .discriminates as to penalty, a physician being subject to a fine of only one hundred dollars while all other persons are subject to a fine of from one to three hundred dollars. (Miss. v. Lewis, 101 U. S., 22; Cooley's Const. Limit., p. 14 and note at bottom of page; Const. of Ky. (1850), art. 13, sec. 1; Const. of Ky. (1891), sec. 3.)

A. E. COLE & SONS ON SAME SIDE.

1. The Fleming county prohibition law does not require the seller to have a prescription each time there is a sale.

2. The object of the law was to prevent the use of intoxicants as a beverage and not to prevent its use for medicinal purposes.   (Acts 1886, vol. 2, pp. 17, 18.)

3. The act is unconstitutional because it discriminates as to penalty. (Const. of Ky. (1850), art. 13, sec. 1; Const. of Ky. (1891), sec. 3.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

We are asked by the learned attorney-general to

extend the opinion in this case, and by a construction of the act in question to settle the law regulating the sale of liquors in Fleming county. The act provides—

1. That it shall be unlawful for any person to sell, barter, give, loan or traffic in spirituous, vinous or malt liquors in any quantity whatever, within the county of Fleming, except as hereinafter provided.

2. This act shall not apply to the procuring or use of wine for sacramental purposes, or to a regular resident practicing physician, who, in good faith, prescribes the same as a medicine to his patient or patients, or to a sale from a distillery in the county by the owner thereof or his agent, at any one time in a quantity not less than ten gallons, and then not to be drunk on the premises where sold or premises adjacent thereto.

3. Nor shall this act or its provisions apply to those who give or furnish spirituous, vinous or malt liquors to a member or members of their own family, or their invited guests at their own household.

4. Any person violating the provisions of the first section of this act shall be fined not less than one hundred nor exceeding three hundred dollars, etc.

5. Any physician who shall furnish spirituous, vinous or malt liquors to any person or persons, except as a medicine, shall be fined one hundred dollars for each offense, to be recovered, etc.

6. The procuring for or the delivery by one person of liquors to another, unless a member of the same family, or their invited guests at their own household, to be drunk as a beverage, shall be deemed a sale under the provisions of the first section of this act, and subject the party pro-

curing or delivering the same to the penalties annexed for a violation of said section.

Then follow other sections providing for a vote and the enforcement of the provisions of the act by the county officers, etc.

It is contended by the appellee (1) that the act is unconstitutional, because it imposes a different penalty on physicians for furnishing liquors than on other persons. But we think that different penalties for the same offense are not intended to be imposed. The letter of the act, it is true, imposes the penalty of $100 on the physician who shall "furnish" such liquors, and of from $100 to $300 on other persons furnishing the same. But it is evident that the offense attempted to be provided against in the fifth section as to physicians is that of prescribing liquors save as a medicine. We do not doubt that if a physician furnishes such liquors to another, to be drunk as a beverage, he would be punishable under the fourth section as other persons. He is excepted from the act only when he "in good faith prescribes the same as a medicine." If he prescribes it to be used otherwise than as a medicine, he is punishable under the fifth section. (2) The appellee insists that the sixth section is a limitation on the first section; that "the procuring for or the delivery by one person of liquors to another, to be drunk as a beverage, constitutes the selling, bartering, giving and loaning as designated in the first section, and such liquors must be sold, bartered, given, loaned, that is, procured for and delivered to another, to be drunk as a beverage, before there can be an infraction of the law.

This contention is not without plausibility, and if the sixth section is to be regarded as a limitation on the first,

and " the procuring for or delivery by one person of liquors to another " is to be regarded as constituting the sale, barter, gift and loan mentioned in the first section, then, as a chain can not be stronger than at its weakest point, the important modification found in the sixth section, " to be drunk as a beverage," must be regarded as qualifying the act of furnishing such liquors as denounced in both the first and sixth sections. Not the distiller alone, therefore, or the merchant, or the grocer, or the druggist may furnish such liquors; but any person may do so, provided they are not furnished " to be drunk as a beverage."

Of course, if this be the proper construction of the act, it should not argue against its adoption by us, that sales of liquors for medicinal purposes, and not to be drunk as a beverage, would increase rapidly in that hitherto healthy locality, although it must be admitted that if the patient may diagnose his own ailment, and the liquor dealer prescribe the remedy, the act would soon permanently fall into a state of " innocuous desuetude." But we are convinced such is not the meaning of the language of the act, nor is it in accord with its spirit.

The first section stands without modification or limitation. Whoever sells, barters, gives, loans or traffics in spirituous, vinous or malt liquors in any quantity in Fleming county does an unlawful act, unless he is a physician and prescribes such liquors as a medicine, or a distiller and sells in the quantity designated by the act, or unless he gives them to his family or to his invited guest, or furnishes wine for sacramental purposes, or as a druggist fills the prescription of a physician. But more than this—in addition to and independent of such selling,

giving, etc., whoever—though he may not sell such
liquors or barter, give, loan or traffic in them, yet who-
ever procures such liquors for, or delivers them to, another
to be drunk as a beverage—whether he be the accommo-
dating stage-driver who, without selling, giving, loaning
or trafficking in such liquors, yet loads his coach down
with the "irrepressible jug," the unvarying accompani-
ment of stringent liquor laws, or be the special messenger
sent in his carry-all with orders to the nearest "wet"
town—is guilty under the sixth section of this act.　He
is the go-between who sells not, or gives, or loans, or
traffics in such liquors, yet he procures them for and de-
livers them to another to be used, not as a medicine, but
as a beverage, and he it is that the sixth was aimed at.
The ambitious purpose of the act, as indicated in its sixth
section particularly, was to prevent absolutely the impor-
tation of spirituous, vinous or malt liquors into the county
for use as a beverage.　While the act does not make it
unlawful for a man to take a drink of such liquors in the
county, and indeed graciously allows him to give them
to his family and even to his guest, if at his household by
his invitation, yet the law provides that no one may pro-
cure such liquors for him or deliver them to him unless
the distiller does so by the quantity. They can not other-
wise be procured for or delivered to him to be used "as
a beverage." This seeming restraint on the personal
liberty of the citizen is self-imposed, and its constitution-
ality is maintainable on abundant authority in this and
other courts of the country.　It is noticeable that while
the act permits the physician to prescribe such liquors as
a medicine, it nowhere authorizes anyone to fill the pre-
scription; but in the Reynolds case (89 Ky., 147), this court,

looking to the reasonable intent and not the letter of this act, held that a druggist might fill the prescription of the physician. It was there said that "the settled policy of the State, in the effort to control the liquor traffic, has been to confine the sale in small quantities to druggists and physicians, to be used as a medicine," which is a sufficient answer to the question asked by counsel in this case, "If a druggist may fill a prescription, why may not any other person do so?" It is not the policy of the law, and certainly not in accord with common reason, that the unskilled and non-professional may decipher the enigmatical *prescription* of the erudite doctor! And certainly is he not to be intrusted with such enticing responsibility when it comes to filling a prescription for spirituous, vinous and malt liquors!

When we speak of the intent or spirit of the act, we must be understood as meaning the legislative intent. The intention of zealous framers of this act was no doubt to confine the furnishing of liquors, as well as its prescription, to the physician. They do not use the term druggist in the act, or affect to know even of the existence of the art of the pharmacologist; but to render its arbitrary features tolerable and to remove constitutional objections the courts must construe liberally the act as a whole, though we can not extend its meaning beyond legitimate and reasonable limits.

Therefore (1) the distiller can not fill the physician's prescription—much less could he sell without it—or dispose of his product otherwise than as permitted by the act.

(2) No other person than the physician or druggist can

Commonwealth v. Day.

sell, barter, give, loan or traffic in such liquors, in any quantity whatever, with or without a prescription.

(3) Nor can a person by importation or otherwise, as agent or servant, or as a "go-between," procure for or deliver to another such liquors to be used as a beverage, though such person may, with a prescription prescribed in good faith by a physician, procure such liquors from the physician or druggist to be used as a medicine. The sick man need not go after the liquor in person.

(4) Each sale or procurement must be accompanied by a distinct prescription, and a person can not obtain such liquors from the druggist or physician on a prescription indefinite as to quantity, or so general as to cover future deliveries.

We think these views substantially cover the case at hand and the points raised by learned counsel. If some of the features of this act seem harsh or arbitrary, it is to be remembered that "the way to kill a bad law is to enforce it!" This construction is directed to be certified as the law of the case.